UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARC STUDENTS FOR LIBERTY
CAMPAIGN, an unincorporated
association,

        NO. CIV. S-09-2446 LKK/GGH

    Plaintiff,

  v.

        O R D E R

LOS RIOS COMMUNITY COLLEGE
DISTRICT, BRICE W. HARRIS,
Chancellor, in his official
capacity; WILLIAM V. KARNS,
Vice Chancellor in his
capacity, and DOES 1-10,

    Defendants.
_____/

    This case concerns an election for a Student Trustee at Los Rios Community College. Plaintiffs claim that due to asserted voting irregularities the community college district improperly invalidated the election and appointed a Student Trustee. Plaintiff has moved for a preliminary injunction which would require the district to count the votes in the election and seat the student who obtained the most votes. The plaintiffs' case appears very strong, but as explained below, given the heavy burden that must

1

be met, it is not clear that preliminary mandatory injunctive relief is appropriate.

**I.    BACKGROUND**

On April 21 and 22 of 2009, the Los Rios Community College District ("District") held an election at its member colleges for a Student Trustee.  Following the election for the Student Trustee, defendant Vice Chancellor William K. Karns and other members of the executive staff of the District learned of irregularities in the scheduling of voting hours. Specifically, the District's largest college, American River College ("ARC") advertised that its polls would be open from 9:00 a.m to 9:00 p.m. both days, two hours later than the District permitted and than students at the other schools were allowed to vote. ARC kept the polls open until 9:00 p.m. on the first day, but then, without notice to the student body, closed the polls at 7:00 p.m. on the second day. The District concluded that the irregularities in ARC's polling hours led to the disenfranchisement of students at the other colleges on the first day in that they could not vote after 7 p.m. and students at ARC who tried to vote on the second day after 7 p.m. believing that the polling was open until 9 p.m.[1] The District

---

[1] The assertion of disenfranchisement is not supported by any evidence.  Vice Chancellor of the Los Rios Community College District, William V. Karns, asserts " . . . I determined that the irregularities in the polling hours disenfranchised an indeterminate number of students" but "I concluded that it was not possible to determine with certainty who were disenfranchised . . . . ." Decl. of Karns at ¶¶ 9, 11.

2

considered several options to overcome the irregularities it perceived in the trustee election, including conducting a new election, which it decided against due to lack of monetary resources and scheduling issues with summer break approaching. Ultimately, the District decided to invalidate the election and established procedures to appoint a Student Trustee. The Board ultimately appointed a student to the position.

### II. STANDARD OF REVIEW FOR FED. R. CIV. P. 65 MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 376 (2008) (internal citation omitted). When a court considers whether to grant a motion for a preliminary injunction, it balances "the competing claims of injury, . . . the effect on each party of the granting or withholding of the requested relief, . . . the public consequences in employing the extraordinary remedy of injunction," and plaintiff's likelihood of success. Id. at 374, 376-77 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In order to succeed on a motion for a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 129 S. Ct. at 374.

An even more stringent standard is applied where mandatory,

as opposed to prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. See Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. Id.

### III. ANALYSIS

**A.   Initial Matters**

As a preliminary matter, the court must consider whether plaintiff has adequately provided evidence to support its motion for a preliminary injunction. Here, plaintiff attached three documents to its motion and a declaration by a student indicating that all facts in the motion are true and based on his personal knowledge and that he has read the attached exhibits. The affidavit was signed electronically, and dated three months prior to the filing of the motion. The signature violates Local Rule 7-131(f), which permits signatures of non-attorneys to be submitted in an electronic format bearing a "/s/" so long as the signature includes a statement that counsel has a signed original. Counsel has a duty to maintain the

1  original signature for one year after the exhaustion of all
2  appeals. Id.

3  This problem in plaintiff's evidence is significant.
4  Nonetheless, "[t]he trial court may give even inadmissible
5  evidence some weight, when to do so serves the purpose of
6  preventing irreparable harm before trial." Flynt Distributing
7  Co, Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984).
8  Consequently, assuming a demonstration of irreparable injury,
9  the problems in plaintiff's evidence will affect the weight the
10 court gives it, not whether it is considered at all.[2]

11 Additionally, the court may rely on the evidence provided
12 by the defendants in support of their opposition when
13 considering plaintiff's motion. Because defendant's evidence
14 includes most, if not all, the facts plaintiff sought to enter,
15 and was properly presented to the court, the quality of
16 plaintiff's evidence does not constitute a significant barrier
17 to relief. Plaintiff's motion, therefore, meets this initial
18 burden because the critical facts appear not to be in dispute.

19 **B.   Preliminary Injunction**

20 **1.   Likelihood of Success on the Merits**

21 In order to determine whether plaintiff is likely to
22 succeed on the merits, the court will first consider what the
23 state law requires. Second, the court will consider whether any
24 violation of state law demonstrated by plaintiff rises to the

---

[2] The court, nonetheless, warns plaintiff to comply with local rules in all future filings before this court.

5

level of a violation of due process of law under the U.S. Constitution.

### a.  State Law and Regulations

Section 72023.5(a) of the California Education Code provides that the Student Trustee for each community college district "shall be chosen, and shall be recalled, by the students enrolled in the community colleges of the district in accordance with procedures prescribed by the governing board." As will be seen, the fact that provision for a Student Trustee is found in the Education Code rather than the Elections Code is a basis for the defendants' assertion that plaintiffs will not prevail at trial.

The Student Trustee is a nonvoting member of the board of trustees. Moreover, the Student Trustee's powers are limited to: (1) "attending each and all meetings of the governing board, except . . . executive sessions of the governing board;" (2) being "seated with the members of the governing board and . . . recognized as a full member of the board at meetings, including receiving all materials presented to the board members and participating in the questioning of witnesses and the discussion of issues;" (3) making and seconding "motions at the discretion of the governing board;" and (4) attending "closed sessions, other than closed sessions on personnel matters or collective bargaining matters, at the discretion of the board." Cal. Educ. Code § 72023.5(a-b). The limits on the power of the Student Trustee raises questions of whether a constitutional violation

6

is at issue. Before addressing that question, however, the court turns to interpretation of the California statute.

In support of its motion, plaintiff cites to an Opinion of the California Attorney General concerning the election of Student Trustees. After considering whether a community college district governing board may establish procedures where the Student Trustee could, among other options, ever be appointed by the board, the opinion concludes that "student members must be selected in an election by a majority or plurality of all community college students enrolled in the district" because "no other intent can be reasonably ascribed to the Legislature." Office of the Attorney General, State of California, Opin. No. CV 78-104 (Mar. 23, 1979). Under California law, the Attorney General's opinions are not binding, yet are "entitled to great weight and, in the absence of contrary controlling authority, persuasive." City of Irvine v. S. Cal. Ass'n of Gov'ts, 175 Cal. App. 4th 506, 521 (Cal. Ct. App. 2009).[3]

In essence, defendants' argument is that vacating the election and appointing a Student Trustee does not violate state law because doing so was within the District board's discretionary authority. In support of this argument, defendants refer to § 70902 of the California Education Code. This section

---

[3] Whether such deference should be accorded by a United States District Court is open to doubt. Be that as it may, the statute seems plain on its face without reference to the Attorney General's opinion. Nonetheless, as is discussed infra, defendants argue to the contrary.

7

provides that, (1) "The governing board of each community college district shall establish rules and regulations not inconsistent with the regulations of the board of governors and the laws of this state for the government and operation of one or more community colleges in the district," id. at § 70902(a)(2); and (2) "In carrying out the powers and duties specified in [Cal. Educ. Code § 72023.5], the governing board of each community college district shall have full authority to adopt rules and regulations, not inconsistent with the regulations of the board of governors and the laws of this state, that are necessary and proper to executing these prescribed functions," id. at § 70902(c).

Defendants maintain that the election irregularities discussed above caused the election to violate § 72023.5. Consequently, they argue they were permitted to invalidate the election and appointed a Student Trustee. Defendants do not provide any specific statutory support for their authority to invalidate an election with irregularities or to appoint a trustee after such an invalidation. Rather, they rely on their general discretionary authority. This discretionary authority, however, is clearly limited by the regulations the board has promulgated and the laws of California. It seems likely that the plaintiff will prevail on the issue of whether defendants' discretionary actions actually violated the Education Code.[4]

---

[4] Moreover, defendants do not provide any authority for their ability to apply a regulation retroactively, which is how they

8

Moreover, the court is not persuaded that the irregularities at issue rise to the level such that the election should have been invalidated. While not concerning community college elections, California courts have considered whether inconsistencies in the hours polling precincts are open should invalidate an election or the votes from the inconsistent precincts.[5] In <u>Kenworthy v. Mast</u>, the California Supreme Court considered whether an election was invalid because two polling precincts did not open on time. 141 Cal. 268, 269-70 (1903). The court concluded that, "the true test to be applied to departures from the requirements of the laws relating to the conducting of elections on the proper day and at the proper place, be those requirements called mandatory or directory, is as to whether or

---

invalidated the election and appointed a Student Trustee.

[5] Plaintiff has cited to two sections of the California Elections Code that indicate that the Elections Code applies to the election of community college trustees. Cal. Elec. Code §§ 10600, 11000. These sections, however, only apply to "members" of the governing board of community college districts. Section 72023.5 of the Education Code is ambiguous as to whether the Student Trustee is in that sense, a "member" of the governing board. Specifically, while referred to as a "student member" throughout the statute, the Student Trustee is defined in opposition to the full members of the board. Thus, the Student Trustee has the quite limited powers as discussed above. The code provides that, "A nonvoting student member shall be seated with the members of the governing board and shall be recognized as a full member of the board at meetings, including receiving all materials presented to the board members and participating in the questioning of witnesses and the discussion of issues." This language could support the argument that the student member is a member of the board, but could also support the argument that the student member is only to be treated as a full member at meetings. The court has been unable to find any cases addressing this issue. For these reasons, the question of whether the Elections Code applies to the election of the Student Trustee is a closer question than it first appears.

9

not the particular departure is of such a nature as to make it impossible or extremely difficult to determine, under the circumstances of the case, whether fraud had been committed or anything done which would affect the result." Id. at 272-73; see also Wilks v. Mouton, 42 Cal.3d 400, 404 (1986) (superceded by statute); Willburn v. Wixson, 37 Cal. App. 3d 730, 736 (Cal. Ct. App. 1974). Here, there is no evidence of fraud or any support for the notion that the result would be significantly altered by counting the votes from ARC.

For these reasons, the court is persuaded that there is significant support to conclude that defendant's actions in invalidating the election and appointing a Student Trustee violated state law concerning the election of the Student Trustee.

At oral argument defendants cited Flint v. Dennison, 488 F.3d 816 (9th Cir. 2007) for the proposition that student elections were an educational rather than political event. This argument is buttressed by the fact that the election of the Student Trustee is provided for in the Education Code rather than the Election Code.[6] Flint, however, dealt with student government. The position of membership in the board of trustees of the community college district is quite a different issue

---

[6] Having said as much, the court must confess that it is hard put to find what legitimate educational lesson the invalidation could be seeking to impart. Clearly, the action taken by the board violated the California Supreme Court's holding as to what should be considered in determining whatever irregularities constitute grounds for invalidation of an election.

10

than the question of membership in student government. Moreover, California's statutory provisions are very different from Montana's. Nevertheless, Flint, which distinguishes between elections as educational events and elections as governmental events, lends some support to defendants' position, given that the statutory authority for Student Trustees is found in the Education Code.

### b. Violation of Constitutional Due Process

The most fundamental question to be answered is whether plaintiff has alleged violation of rights protected by the Fourteenth Amendment. "[A] mere error of state law, . . . is not a denial of due process." Rivera v. Ill. 129 S. Ct. 1446, 1454 (2009), quoting Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982). "The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness . . . .'" Id., quoting, 385 U.S. 554, 563-64 (1967).

Although the high court has never articulated when violation of state law is or is not a violation of the process due, the failure to comply with state and local laws concerning an election has been held to constitute a violation of federal due process where the fundamental fairness of the election is called into question. It has been held that where "the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order. Such a

11

situation must go well beyond the ordinary dispute over the counting and marking of ballots." Duncan v. Poythrese 657 F.2d 691, 703 (5th Cir. 1981) (quoting Griffin v. Burns, 570 F.2d 1065, 1077-78 (1st Cir. 1978). The Fifth Circuit applied this rule to hold that where the state officials "denied the . . . electorate the right granted by state statute to choose [their elected official], we are faced with patent and fundamental unfairness." Id. at 703 (internal quotation omitted). The court concluded that the official's actions eroded the constitutional process by "purposely abrogat[ing] the right to vote, a right that is fundamental to our society and preservative of all individual rights." Id. at 703-04.

Similarly, in Bonas v. Town of North Smithfield, the court held that the town's decision not to hold regular elections for the town council and the school committee in its final odd-numbered year before its elections were switched to even-numbered years was an unconstitutional violation of the town charter and referendum, which caused the switch. 265 F.3d 69, 77-78 (1st Cir. 2001). Also applying Griffin, 570 F.2d at 1077, the court reiterated that "in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)." Bonas, 265 F.3d at 74. The court held that the total and complete disenfranchisement that occurred granted federal jurisdiction where the town refused to hold a

required election. Id. at 75. These cases suggest that plaintiff has raised a due process claim.

Moreover, the Supreme Court appears to suggest that junior college student trustee elections warrant scrutiny under the Fourteenth Amendment. See Hadley v. Junior College District, 397 U.S. 50 (1970). There, the Court held that the apportionment system of electing student trustees among several junior colleges in a district violated the Equal Protection Clause's "one man, one vote" principle. Id. at 58. The Court, however, extended equal protection rights to the election of the junior college student trustee because the trustees "carry out governmental functions" and are elected by popular vote. Id. at 54. These trustees were elected by residents in a community college district, not by students enrolled in the colleges. Id. at 51. The community college trustees in Hadley, however, could "levy and collect taxes, issue bonds with certain restrictions, hire and fire teachers, make contracts, collect fees, supervise and discipline students, pass on petitions to annex school districts, acquire property by condemnation, and in general manage the operations of the junior college." Id. at 53. This language suggests that the "governmental function" the trustees served was dependent or at least related to their broad powers to effect the residents of the district. This distinguishes Hadley from the instant case.

Nonetheless, when explaining its reasoning, the Court declared that, "If there is any way of determining the

13

importance of choosing a particular governmental official, we think the decision of the State to select that official by popular vote is a strong enough indication that the choice is an important one." Id. at 55. The Court continued and held that, "once a State has decided to use the process of popular election and once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded." Id. at 59. While Hadley concerned an equal protection question, and not a due process question, this language is highly suggestive that the failure to count votes and seat the elected student in the instant case merits constitutional review.[7] Specifically here, the state legislature decided to have Student Trustees selected by popular election by a class of voters determined by their enrollment in a community college.

    As noted above, Flint is distinguishable from the case at bar. Most fundamentally, the election at issue is entirely different. Specifically, the election of members of student government, or the existence of student government at all, is not dictated by the Montana legislature. Rather, the Board of

---

[7] Persuasive authority suggests that the requirement of governmental function relates to whether a fundamental right exists, and not as to when equal protection claims arise. In Duncan, the court found strong parallels between the equal protection claims and due process claims concerning the right to vote: "Just as the equal protection clause of the fourteenth amendment prohibits state officials from improperly diluting the right to vote, the due process clause of the fourteenth amendment forbids state officials from unlawfully eliminating that fundamental right." Duncan, 657 F.2d at 704.

14

Regents ("Board") administers the student government. The student government has very limited powers. Id. at 820-21. Their constitution must be approved by the Board and all their actions must comply with the policies of the Board. Id. The university considers the student government to be primarily and educational tool. Id. at 821. Here, the election is mandated by state law and concerns membership in the community college governing board. Furthermore, Flint concerns a challenge to the election procedure set by the Board, not, as here, a claim based on the governing board's failure to follow a statute and its own procedure. Lastly, Flint addresses a question of the rules which a candidate must follow in running for office, not a question of whether students were disenfranchised. Because of these substantial differences between Flint and the case at bar, Flint is not controlling, and does not indicate that plaintiff's due process claim fails as a matter of law.

    Flint does, however, provide some support for the argument that the Student Trustee does not serve a government function. Particularly, one of the factors considered by the court when deciding that the student government elections primarily serve an educational purpose rather than a governmental purpose is that only enrolled students at the University of Montana, who met certain eligibility requirements, could vote for members of student government. Id. The Student Trustee is similarly elected only by enrolled students, and not by all residents of the district. Again, however, this argument is by no means

15

conclusive as to whether the Student Trustee serves a governmental function. As noted, the Student Trustee functions in a manner distinct from other trustees. He may make and second motions only with the consent of the board, he cannot attend closed sessions of the board concerning personal or collective bargaining, and may only attend other closed sessions at the discretion of the board. These limitations on the Student Trustee's function raises questions about whether the election of the Student Trustee is really about the filling of a political position, subject to the due process clause, or whether it is something short of that, and is merely a question of state law.

Ultimately, plaintiff's likelihood of success on the merits is, in this court's view, quite high. At this stage of litigation, however, the court cannot determine with certainty whether the Due Process Clause of the Constitution applies to the election of the student trustee. The court can only grant plaintiff's motion for a mandatory preliminary injunction where "both the facts and the law clearly favor the moving party." Plaintiff has not met this high burden, and therefore, plaintiff's motion must be denied.[8] Having said as much, it appears to the court that only questions of law remain

---

[8] Defendants also argue that plaintiff cannot bring a claim for prospective injunctive relief under § 1983 by virtues of the Eleventh Amendment. However, plaintiff correctly responds that under Ex Parte Young, 209 U.S. 123 (1908) plaintiff can be entitled to prospective injunctive relief against individual employees sued in their official capacity. See also Wolfe v. Strankman, 392 F.3d 358, 365 (9th Cir. 2004).

16

unresolved. If so, no trial is necessary.

## IV. CONCLUSION

Plaintiff's motion for a preliminary injunction is DENIED, because there are questions of law and the court does not know whether there are issues of fact for trial.

Accordingly, the defendant is to file within fifteen (15) days a brief setting forth any factual issues pertinent to the case which require a trial. The brief shall also address the unresolved legal issues noted in this opinion. The plaintiff shall respond fifteen (15) days thereafter. If the court determines that there are no factual issues requiring trial, the court will treat the matter as ripe for summary judgment and issue an order accordingly.  The court will set a further hearing if it believes it necessary.

IT IS SO ORDERED.

DATED: November 18, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17