1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8               FOR THE EASTERN DISTRICT OF CALIFORNIA

9

ARC STUDENTS FOR LIBERTY
10  CAMPAIGN, an unincorporated
association,
11                                    NO. CIV. S-09-2446 LKK/GGH

12        Plaintiff,

      v.
13                                           O R D E R

LOS RIOS COMMUNITY COLLEGE
14  DISTRICT, BRICE W. HARRIS,
Chancellor, in his official
15  capacity; WILLIAM V. KARNS,
Vice Chancellor in his
16  capacity, and DOES 1-10,

17        Defendants.

18  _____/

19        This case concerns an election for a Student Trustee at Los

20  Rios  Community  College  District.  After  perceived  voting

21  irregularities, the community college district invalidated an

22  election and had leaders from each school in the district select

23  the Student Trustee for the following year. Plaintiff has moved for

24  summary judgment. Defendants have moved to dismiss plaintiff's case

25  on the grounds of mootness. For the reasons described below,

26  plaintiff's motion for summary judgment is granted, and defendant's

                                  1

1  motion for dismissal is denied.

2                              **I. BACKGROUND**

3       On April 21 and 22 of 2009, the Los Rios Community College

4  District ("District") held an election at its member colleges for

5  a Student Trustee. Following the election for the Student Trustee,

6  defendant Vice Chancellor William K. Karns and other members of the

7  executive staff of the District learned of irregularities in the

8  scheduling of voting hours. Specifically, the District's largest

9  college, American River College ("ARC"), advertised that its polls

10 would be open from 9:00 a.m to 9:00 p.m. on both days, two hours

11 later than the District permitted and than students at the other

12 schools were allowed to vote. ARC kept the polls open until 9:00

13 p.m. on the first day, but then, without notice to the student

14 body, closed the polls at 7:00 p.m. on the second day. The District

15 concluded that the irregularities in ARC's polling hours led to the

16 disenfranchisement of students at the other colleges on the first

17 day in that they could not vote after 7 p.m. and students at ARC

18 who tried to vote on the second day after 7 p.m. believing that the

19 polling was open until 9 p.m. The District has presented evidence

20 that a significant number of students were likely disenfranchised.

21 The District considered several options to overcome the

22 irregularities it perceived in the trustee election, including

23 conducting a new election, which it decided against due to lack of

24 monetary resources and scheduling issues with summer break

25 approaching. Ultimately, the District decided to invalidate the

26 election and allow student representatives from each college to

                                    2

1  select the Student Trustee.

2       Subsequently, the District passed regulations to deal with

3  irregularities in elections for Student Trustees. These regulations

4  provide that if the election for Student Trustee is unfair, the

5  board may take several actions to ensure fairness, including

6  invalidating the election and selecting a Student Trustee in the

7  manner in which the April 2009 selection proceeded. These

8  regulations also have transferred responsibility for regulating the

9  elections from the student body to District employees.

10      The term of the Student Trustee selected in April 2009 has

11  ended. A new election for this year's Student Trustee was held in

12  April 2010. A student has been elected, and will be seated in the

13  fall, for this position.

14  **II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY**

15  **JUDGMENT**

16      Summary judgment is appropriate when there exists no genuine

17  issue as to any material fact. Such circumstances entitle the

18  moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

19  see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

20  Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

21  summary judgment practice, the moving party

22       always bears the initial responsibility of informing the
         district court of the basis for its motion, and
23       identifying those portions of "the pleadings,
         depositions, answers to interrogatories, and admissions
24       on file, together with the affidavits, if any," which it
         believes demonstrate the absence of a genuine issue of
25       material fact.

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

3

1 R. Civ. P. 56(c)).

2    If the moving party meets its initial responsibility, the
3 burden then shifts to the opposing party to establish the existence
4 of a genuine issue of material fact. Matsushita Elec. Indus. Co.
5 v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First
6 Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89
7 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party
8 may not rely upon the denials of its pleadings, but must tender
9 evidence of specific facts in the form of affidavits and/or other
10 admissible materials in support of its contention that the dispute
11 exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.
12 at 289. In evaluating the evidence, the court draws all reasonable
13 inferences from the facts before it in favor of the opposing party.
14 Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,
15 Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme
16 v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).
17 Nevertheless, it is the opposing party's obligation to produce a
18 factual predicate as a basis for such inferences. See Richards v.
19 Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The
20 opposing party "must do more than simply show that there is some
21 metaphysical doubt as to the material facts . . . . Where the
22 record taken as a whole could not lead a rational trier of fact to
23 find for the nonmoving party, there is no 'genuine issue for
24 trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).
25 ////
26 ////

4

### III. ANALYSIS

**A.   Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment on the Grounds of Mootness**

**1.   Generally**

Defendants argue that plaintiff's claims are moot and, thus, this case should be dismissed. Plaintiff sought preliminary injunctive relief to require the district to count the votes in the election and seat the student who obtained the most votes for the 2009-2010 school year term. That term has since passed. As such, plaintiff's claim to seat the student who obtained the most votes in the April 2009 election is moot. However plaintiff's complaint also seeks permanent injunctive relief enjoining defendants from "future unlawful interference with student elections" as well as declaratory relief from this court indicating that the district violated the due process rights of plaintiff's members in their handling of the April 2009 election. Compl. 1. These claims are simply not moot.

Further, plaintiff's claim epitomizes the exception to mootness of "capable of repetition, yet evading review". This exception applies when two criteria are met. First, there must be a reasonable chance that the plaintiff will suffer the injury again. Citizens for Clean Gov't v. City of San Diego, 474 F.3d 647, 650 (9th Cir. 2007). Second, the injury must be of inherently limited duration so that it is likely to always become moot before federal litigation is completed. Id. For example, in Roe v. Wade, 410 U.S. 113, 125 (1973), a seminal case concerning laws

1  prohibiting abortion, the Supreme Court denied a request by
2  defendants to dismiss on the grounds of mootness where the
3  plaintiff was no longer pregnant because the duration of pregnancy
4  was inherently likely to be shorter than the time required for
5  federal court litigation. Likewise here, the Student Trustee is
6  elected annually. Defendants would be able to evade review of their
7  actions concerning the election if every challenge to an election
8  became moot with the election of a new Student Trustee. As
9  described below, the regulations passed by the District demonstrate
10 a likelihood that defendant will again refuse to seat a popularly
11 elected Student Trustee due to perceived irregularities in an
12 election.

### 2. The Amended Policy and Regulation

14     Defendants largely misconstrues the nature of plaintiff's
15 claim. Plaintiff is not making a facial challenge to regulations
16 that were promulgated after the contested election. These
17 regulations set forth a procedure where the district may, under
18 circumstances similar to the controversy at issue here, invalidate
19 an election and seat a student who is not popularly elected.
20 Plaintiff argues that defendants lack the authority to do so either
21 through the District's general authority, or through the passing
22 of regulations. The regulations discussed in detail throughout
23 defendants' papers demonstrate that there is a significant chance
24 that defendants will take similar actions again.

25     Thus, the instant case is distinguishable from City of Los
26 Angeles v. Lyons, 461 U.S. 95 (1983), where the Supreme Court held

that a plaintiff seeking injunctive or declaratory relief must show a likelihood of future harm. <u>Id.</u> at 105. In <u>Lyons</u>, plaintiff brought a suit to enjoin as unconstitutional the use of chokeholds by the Los Angeles Police Department in instances where the police were not threatened with death or serious bodily injury. <u>Id.</u> at 98. The Court reasoned that while Lyons could bring a suit seeking damages for injuries resulting from the chokehold, he did not have standing to enjoin the police because he could not demonstrate a substantial likelihood that he, personally, would be choked again in the future. <u>Id.</u> at 110. What was critical to the Court's reasoning was that Lyons could not show that he was any more likely than anyone else to be choked in the future. <u>Id.</u>

Here, however, plaintiff, a student group involved in elections at American River College, is more likely than the general population to be subject to the District's regulation of the election for Student Trustee. Further, the District's promulgation of the regulations following this incident that specifically allow for a Student Trustee to be selected through a means other than popular vote demonstrates a likelihood that plaintiff will suffer this injury again. Further, it appears that plaintiff contends that the irregularities that caused the District to invalidate the April 2009 election were a pretext to prevent plaintiff's chosen candidate from election. To the extent that plaintiff's political goals remain at odds with those of the District, plaintiff has demonstrated that it is more likely than the general population to have its members' due process rights

7

violated in the future. Plaintiff is not seeking to invalidate the regulations as unconstitutional. Rather, plaintiff is seeking to enjoin the district from invalidating an election for Student Trustee and, then, allowing a candidate who has not been popularly elected to hold the office of Student Trustee. Plaintiff seeks to enjoin this activity whether through formal regulation or the informal, general authority of the district.

### B.   Plaintiff's Motion for Summary Judgment[1]

Plaintiff moves for summary judgment on the grounds that defendants' conduct here violated the Due Process Clause of the federal Constitution. Essentially, it argues first that the state legislature requires that the Student Trustee at the District be elected by a popular vote of the students enrolled in the District colleges. Second, plaintiff argues that defendants' actions preventing the election of the Student Trustee contravenes state law and violated the Due Process Clause of the federal Constitution. Plaintiff does not raise any arguments as to whether injunctive relief is proper and as to what the appropriate scope and nature of such relief should be. Consequently, the court construes plaintiff's motion as a motion for partial summary judgment as to liability. Because the court grants plaintiff's motion for partial summary judgment, plaintiff is instructed to

---

[1] The court notes that plaintiff's motion could be read to suggest that he is seeking relief for a violation of the First Amendment of the U.S. Constitution as well as the Due Process Clause. At no time before this motion has plaintiff raised the issue. As such, the court concludes that plaintiff's motion only seeks summary judgment under the Due Process Clause.

file a motion as to remedy such that it will be heard on September 27, 2010. In order for permanent injunctive relief to issue, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms ___ U.S. ___, ___ S.Ct. ___ (2010) available at 2010 WL 2471057 at *11 (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391(2006)). The parties are directed to respond to page *15 of Monsanto Co., where the Court holds, "[I]f and when [defendant] pursues [conduct] that arguably runs afoul of [federal law], [plaintiff] may file a new suit challenging such action and seeking appropriate preliminary relief. . . . Accordingly, a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm." Further, the parties shall address the scope and nature of appropriate injunctive relief.

### 1.   State Law and Regulations[2]

Section 72023.5(a) of the California Education Code provides that the Student Trustee for each community college district "shall be chosen, and shall be recalled, by the students enrolled in the

---

[2] The court notes that the reasoning from its November 19, 2009 order denying plaintiff's motion for a preliminary injunction, for the most part, remains unchanged.

community colleges of the district in accordance with procedures prescribed by the governing board." The Student Trustee is a nonvoting member of the board of trustees. Moreover, the Student Trustee's powers are limited to: (1) "attending each and all meetings of the governing board, except . . . executive sessions of the governing board;" (2) being "seated with the members of the governing board and . . . recognized as a full member of the board at meetings, including receiving all materials presented to the board members and participating in the questioning of witnesses and the discussion of issues;" (3) making and seconding "motions at the discretion of the governing board;" and (4) attending "closed sessions, other than closed sessions on personnel matters or collective bargaining matters, at the discretion of the board." Cal. Educ. Code § 72023.5(a-b).

In support of its motion, plaintiff cites to an Opinion of the California Attorney General concerning the election of Student Trustees. After considering whether a community college district governing board may establish procedures where the Student Trustee could, among other options, be appointed by the board, the opinion concludes that "student members must be selected in an election by a majority or plurality of all community college students enrolled in the district" because "no other intent can be reasonably ascribed to the Legislature." Office of the Attorney General, State of California, Opin. No. CV 78-104 (Mar. 23, 1979). Under California law, the Attorney General's opinions are not binding, yet are "entitled to great weight and, in the absence of contrary

1 controlling authority, persuasive." <u>City of Irvine v. S. Cal. Ass'n</u>

2 <u>of Gov'ts</u>, 175 Cal. App. 4th 506, 521 (Cal. Ct. App. 2009).[3]

3     In essence, defendants' argument is that vacating the election

4 and appointing a Student Trustee does not violate state law because

5 doing so was within the District's discretionary authority. In

6 support of this argument, defendants refer to Section 70902 of the

7 California Education Code. This section provides that, (1) "The

8 governing board of each community college district shall establish

9 rules and regulations not inconsistent with the regulations of the

10 board of governors and the laws of this state for the government

11 and operation of one or more community colleges in the district,"

12 <u>id.</u> at § 70902(a)(2); and (2) "In carrying out the powers and

13 duties specified in [California Education Code Section 72023.5],

14 the governing board of each community college district shall have

15 full authority to adopt rules and regulations, not inconsistent

16 with the regulations of the board of governors and the laws of this

17 state, that are necessary and proper to executing these prescribed

18 functions," <u>id.</u> at § 70902(c).

19     Defendants maintain that the election irregularities discussed

20 above caused the election to violate § 72023.5. Consequently, they

21 argue they were permitted to invalidate the election and initiate

22 a process for selection of a Student Trustee. Defendants do not

23 provide any specific statutory support for their authority to

24

25     [3] Whether such deference should be accorded by a United States
District Court is open to doubt. Be that as it may, the statute

26 seems plain on its face without reference to the Attorney General's
opinion.

invalidate an election with irregularities or to initiate a process to select a Student Trustee who is not popularly elected. Rather, they rely on their general discretionary authority. This discretionary authority, however, is clearly limited by the regulations the board has promulgated and the laws of California.

In plaintiff's motion for a preliminary injunction, the parties spent significant time discussing whether the irregularities in the Student Trustee election rise to the level that would warrant invalidation of the election. See November 19, 2009 Order, ECF No. 19, at 9-10. This issue does not appear to be relevant in the instant motion. Specifically, plaintiff now argues that the issue is whether the District may enact policies or take actions that would prevent a Student Trustee from being elected by the students in the District's colleges. Accordingly, the court need not decide under what criteria the District may invalidate an election. Rather, the court's inquiry is whether the District may decide, through discretionary acts or through regulations, to seat a Student Trustee who has not been elected by the student bodies of the District's colleges.[4]

---

[4] Plaintiff challenges the regulations on the grounds of vagueness because they allow for invalidation of elections under principles of fairness. As discussed above, the court does not consider this issue under the First Amendment. Section 72023.5 of the Education Code, upon which plaintiff relies, provides that the Student Trustee "shall be chosen . . . by the students enrolled in the community colleges of the district in accordance with procedures prescribed by the governing board." The governing board's procedures, thus, may address determination of irregularities and methods of responding to these irregularities so long as the Student Trustee is nonetheless chosen by the students of the District's colleges. Plaintiff only argues that

1        **2.    Violation of Constitutional Due Process**

2        The fundamental question to be answered is whether the

3   invalidation of the election, in violation of state law, also

4   violated rights protected by the Fourteenth Amendment. "[A] mere

5   error of state law, . . . is not a denial of due process." <u>Rivera</u>

6   <u>v. Ill.</u> 129 S. Ct. 1446, 1454 (2009), <u>quoting</u> <u>Engle v. Isaac</u>, 456

7   U.S. 107, 121 n.21 (1982). "The Due Process Clause . . . safeguards

8   not the meticulous observance of state procedural prescriptions,

9   but 'the fundamental elements of fairness . . . .'" <u>Id.</u>, <u>quoting</u>,

10  385 U.S. 554, 563-64 (1967).

11       **a.    Substantive Due Process Rights In Elections**

12       Although the high court has never articulated when a violation

13  of state law is or is not a violation of the process due, the

14  failure to comply with state and local laws concerning an election

15  has been held to constitute a violation of federal due process

16  where the fundamental fairness of the election is called into

17  question. It has been held that where "the election process itself

18  reaches the point of patent and fundamental unfairness, a violation

19  of the due process clause may be indicated and relief under § 1983

20  therefore in order. Such a situation must go well beyond the

21  ordinary dispute over the counting and marking of ballots." <u>Duncan</u>

22  <u>v. Poythrese</u> 657 F.2d 691, 703 (5th Cir. 1981) (quoting <u>Griffin v.</u>

23  <u>Burns</u>, 570 F.2d 1065, 1077-78 (1st Cir. 1978). The Fifth Circuit

24  applied this rule to hold that where the state officials "denied

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  defendants exceeded their authority under state law concerns the
    seating of a Student Trustee who was not chosen by the students.

1  the . . . electorate the right granted by state statute to choose
2  [their elected official], we are faced with patent and fundamental
3  unfairness." Id. at 703 (internal quotation omitted). The court
4  concluded that the official's actions eroded the constitutional
5  process by "purposely abrogat[ing] the right to vote, a right that
6  is fundamental to our society and preservative of all individual
7  rights." Id. at 703-04.
8  Similarly, in Bonas v. Town of North Smithfield, the court held
9  that the town's decision not to hold regular elections for the town
10  council and the school committee in its final odd-numbered year
11  before its elections were switched to even-numbered years was an
12  unconstitutional violation of the town charter and referendum,
13  which caused the switch. 265 F.3d 69, 77-78 (1st Cir. 2001). Also
14  applying Griffin, 570 F.2d at 1077, the court reiterated that "in
15  those few cases in which organic failures in a state or local
16  election process threaten to work patent and fundamental
17  unfairness, a colorable claim lies for a violation of substantive
18  due process (and, hence, federal jurisdiction attaches)." Bonas,
19  265 F.3d at 74. The court held that the total and complete
20  disenfranchisement that occurred demonstrated federal jurisdiction
21  where the town refused to hold a required election. Id. at 75.
22  Thus, refusal to seat a popularly elected official, as occurred
23  here, may offend due process. The remaining question is whether
24  this election warrants review under the federal Constitution.
25  ////
26  ////

14

1                **b.**    **Whether Elections Warrant Constitutional**

2                     **Scrutiny**

3      The Supreme Court discussed whether a local election warranted

4 scrutiny under the U.S. Constitution in <u>Hadley v. Junior College</u>

5 <u>District</u>, 397 U.S. 50 (1970). There, the Court held that the

6 apportionment system of electing student trustees among several

7 junior colleges in a district violated the Equal Protection

8 Clause's "one man, one vote" principle. <u>Id</u>. at 58. The Court,

9 however, extended equal protection rights to the election of the

10 junior college student trustee because the trustees "carry out

11 governmental functions" and are elected by popular vote. <u>Id.</u> at 54.

12 The community college trustees in <u>Hadley</u> could "levy and collect

13 taxes, issue bonds with certain restrictions, hire and fire

14 teachers, make contracts, collect fees, supervise and discipline

15 students, pass on petitions to annex school districts, acquire

16 property by condemnation, and in general manage the operations of

17 the junior college." <u>Id.</u> at 53. This language does not set forth

18 a test for defining government function, but rather suggests that

19 the "governmental function" the trustees served was dependent on

20 or at least related to their broad powers over the residents of the

21 district. Moreover, these trustees were elected by residents in a

22 community college district, not by students enrolled in the

23 colleges. <u>Id.</u> at 51.

24      Nonetheless, when explaining its reasoning, the Court declared

25 that, "If there is any way of determining the importance of

26 choosing a particular governmental official, we think the decision

1   of the State to select that official by popular vote is a strong

2   enough indication that the choice is an important one." <u>Id.</u> at 55.

3   The Court continued and held that, "once a State has decided to use

4   the process of popular election and once the class of voters is

5   chosen and their qualifications specified, we see no constitutional

6   way by which equality of voting power may be evaded." <u>Id.</u> at 59.[5]

7       The parties contest whether <u>Hadley</u> sets forth a two part test

8   for constitutional scrutiny to apply to a local election.

9   Specifically, defendants argue that plaintiff must demonstrate both

10   (1) that the Student Trustee serves a "government function;" and

11   (2) that the Student Trustee is popularly elected. Plaintiff argues

12   that, under <u>Hadley</u>, it only must demonstrate that the legislature

13   intended for the Student Trustee to be popularly elected. While

14   plaintiff's interpretation is reasonable, the court interprets

15   <u>Hadley</u> to require both that the Student Trustee serve a government

16   function and is popularly elected for his election to be entitled

17   to review under the federal Constitution. Nonetheless, the fact

18   that the legislature decided to have a popular election for an

19   office provides substantial evidence that the office serves a

20   government function.

21

22       [5] Persuasive authority suggests that the requirement of
governmental function relates to whether a fundamental right
23   exists, and not as to when equal protection claims arise. In
<u>Duncan</u>, the court found strong parallels between the equal
24   protection claims and due process claims concerning the right to
vote: "Just as the equal protection clause of the fourteenth
25   amendment prohibits state officials from improperly diluting the
right to vote, the due process clause of the fourteenth amendment
26   forbids state officials from unlawfully eliminating that
fundamental right." <u>Duncan</u>, 657 F.2d at 704.

i.   **Whether the Student Trustee is Popularly Elected**

As discussed in this court's prior order, there is no question that the Student Trustee is popularly elected. Specifically, the state legislature decided to have Student Trustees selected by popular election by a class of voters determined by their enrollment in a community college. Defendant argues that because this class is not the same class from which the other trustees are elected, a so-called "general public election," the Student Trustee is not publically elected. This argument simply fails under Hadley. The Court specifically held that an election is popular when a legislature defines a class of voters. An election does not lose its status as popular  depending on how the legislature chooses a class. Rather, even if "a State . . . limit[s] the right to vote to a particular group or class of people," such an election does not cease being popular. Id. at 59-60.

ii.   **Whether the Student Trustee Serves a Government Function**

Determining whether the Student Trustee serves a government function is a more difficult question. As far as the court can find, no federal court has defined a government function. Rather, the powers must be "general enough and have sufficient impact throughout the district" to qualify as a government function. Id. at 53.

Plaintiff argues that the Student Trustee serves a government function. While a non-voting member of the governing board, the

1   Student  Trustee  nonetheless  influences  policy  decisions  that

2   concern the general population. In support of its contention that

3   a non-voting member of a agency may serve government functions,

4   plaintiff  cites  to  numerous  regulatory  agencies  and  other

5   government bodies, which have non-voting members. While some of

6   these examples are not directly relevant because the non-voting

7   member of the agency is a federal government representative, some

8   are clearly applicable. While noting that many of these positions

9   are appointed positions, that fact does not alter a conclusion that

10  they nonetheless serve government functions.

11      Defendants  have  raised  several  arguments  on  this  question.

12  They are either irrelevant or distinguishable. First, the court can

13  find no significance to the fact that the legislature included the

14  provision for election of the Student Trustee in the California

15  Education Code rather than the California Election Code. The issue

16  simply cannot turn on how the government organizes its statutes.

17      Likewise, defendants' reliance on <u>Flint v. Dennison</u>, 488 F.3d

18  816 (9th Cir. 2007) appears inappropriate. As the court discussed

19  in its prior order, <u>Flint</u> is distinguishable from the case at bar.

20  Most  fundamentally,  the  election  at  issue  there  was  entirely

21  different.  That case dealt with the election of members of student

22  government, an issue which appears not to be dictated by the state

23  legislature. The  Board  of  Regents  ("Board")  administered  the

24  student  government. Moreover,  the  student  government  had  very

25  limited powers. <u>Id.</u> at 820-21. Their constitution must be approved

26  by the Board and all their actions must comply with the policies

1   of the Board. Id. The university considers the student government

2   to be primarily an educational tool. Id. at 821. Here, the election

3   at issue is mandated by state law and concerns membership in the

4   community college governing board. Furthermore, Flint concerns a

5   challenge to the election procedure set by the Board not, as here,

6   a claim based on the District's failure to follow a statute.

7   Lastly, Flint addresses a question of the rules which a candidate

8   must follow in running for office, not a question of whether

9   students were disenfranchised. Because of these substantial

10  differences between Flint and the case at bar, Flint is not

11  controlling, and does not indicate that plaintiff's due process

12  claim fails as a matter of law.

13      Third, defendants' reference to an opinion of the Attorney

14  General[6] finding that Student Trustees do not hold civil offices,

15  as defined by California law, does not suggest that Student

16  Trustees do not serve government functions under federal law. See

17  62 Ops. Cal. Atty. Gen. 126, available at 1979 WL 29208 (Cal. A.G.

18  1979). In this opinion, the Attorney General opined that Student

19  Trustees do not "exercise[] a part of the sovereign power of the

20  government." California law defines the sovereign powers of

21  _____

22      [6] Defendants argue that their reliance on an opinion of the
    California Attorney General is somehow equivalent to plaintiff's

23  reliance on another opinion. That is simply not the case. Plaintiff
    relies on such an opinion as authority as to the interpretation of

24  state law. Defendants seek to rely on the California Attorney
    General's opinion as authority as to how this court should

25  interpret the federal Constitution. Even if the Attorney General
    addressed an issue relevant to the instant proceedings, his opinion

26  would be entitled to little, if any, weight in determining whether
    defendants' conduct offends the federal Constitution.

1   government as "legislative, executive or judicial." <u>Moore v.</u>

2   <u>Panish</u>, 32 Cal. 3d 535, 545 (1982). In <u>Wilson v. San Luis Obispo</u>

3   <u>County Democratic Central Committee</u>, 175 Cal. App. 4th 489, 500

4   (2009), the California Court of Appeals applied <u>Moore</u>, and held

5   that political "[p]arty county central committee members do not

6   exercise any sovereign powers of government." As an initial matter,

7   California's definition of the sovereign powers of government is

8   far from the amorphous definition of government function in <u>Hadley</u>.

9   They are simply not the same test. Evidence of this difference can

10  be found in decisions from the Supreme Court, which found that the

11  U.S. Constitution applies to political party-run primary elections.

12  <u>See</u> <u>Smith v. Allwright</u>, 321 U.S. 649, 661-62 (1944) ("It may now

13  be taken as a postulate that the right to vote in such a primary

14  for the nomination of candidates without discrimination by the

15  State, like the right to vote in a general election, is a right

16  secured by the Constitution."); <u>Terry v. Adams</u>, 345 U.S. 461

17  (1953).

18      The court recognizes that this case raises a close call as to

19  whether the Student Trustee serves a government function.

20  Ultimately, this court finds that the facts that the California

21  legislature decided to codify the election of Student Trustees and

22  that the Student Trustee influences the administration and policies

23  of the community college district demonstrates that the Student

24  Trustee serves a government function, as defined in <u>Hadley</u>.

25          **3.   Defense of Unclean Hands**

26      The defendants have not opposed this motion on the grounds

20

that there is a triable question as to whether plaintiff has unclean hands. This is so despite defendants' request for discovery on this issue and despite defendants raising factual disputes in their response to plaintiff's statement of undisputed facts, which suggest that this defense, however, was considered by the defendants. Defendants' failure to oppose on this ground constitutes waiver of the defense here.

**IV. CONCLUSION**

For the foregoing reasons, the court ORDERS as follows:

(1)   Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 97, is DENIED.

(2)   Plaintiff's Partial Motion for Summary Judgment as to Liability, ECF No. 93, is GRANTED.

(3)   Plaintiff SHALL file a motion relative to remedy such that it shall be heard on September 27, 2010. All memoranda SHALL be filed according to Eastern District of California Local Rules.

IT IS SO ORDERED.

DATED:  August 10, 2010.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT